IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

INTERCARRIER COMMUNICATIONS LLC,
Plaintiff,

v.                                                               Civil Action No. 3:12-cv-776-JAG

WHATSAPP INC.,
Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's motion to dismiss or transfer to a new venue. (Dk. No. 20.) The plaintiff, Intercarrier Communications LLC ("ICC"), has sued the defendant, WhatsApp, Inc. ("WhatsApp") for patent infringement. WhatsApp has moved to dismiss the case for lack of personal jurisdiction or, in the alternative, to transfer venue to WhatsApp's home district, the Northern District of California.

The Court finds that WhatsApp does not have sufficient contacts with the Eastern District of Virginia to warrant this Court's exertion of personal jurisdiction over WhatsApp. Accordingly, the Court GRANTS WhatsApp's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)[1] and DISMISSES the case WITHOUT PREJUDICE.

## I. BACKGROUND

ICC owns U.S. Patent No. 6,985,748 Patent ("the '748 Patent"), entitled "Inter-carrier Messaging Service Providing Phone Number Only Experience." (Compl. ¶ 9.) On October 26, 2012, ICC filed complaints against thirteen different defendants for patent infringement in the

---

[1] Because the Court lacks personal jurisdiction over WhatsApp, the Court cannot consider a transfer of this action to another district. *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999). Accordingly, the Court DENIES WhatsApp's alternative motion to transfer venue as MOOT.

Eastern District of Virginia.[2] ICC alleges that WhatsApp directly infringes the '748 Patent by marketing "WhatsApp Messenger" that provides messaging services claimed in the '748 Patent.

WhatsApp is a Delaware corporation with its principal place of business in California. It "sells and offers to sell products and services throughout the United States," including the Eastern District of Virginia. (Compl. ¶ 3.) WhatsApp's sole product, the WhatsApp Messenger, allows users to send and receive text, picture, audio, and video messages over an internet connection rather than through their phone carrier's network. Users pay 99 cents per year for the WhatsApp Messenger. WhatsApp does not directly receive payment; instead, WhatsApp uses third parties (such as Apple Inc.'s iTunes App Store) to process payments and transmit a portion of those payments to WhatsApp. (Dk. No. 21-1, Koum Decl. ¶ 7.) These third parties also make the WhatsApp Messenger available for smartphone users to download. (*Id.* at ¶ 6.)

ICC's primary allegation regarding jurisdiction states:

> Upon information and belief, the Defendant conducts substantial business in [the Eastern District of Virginia], directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Virginia.

(Compl. ¶ 7.) Additionally, ICC alleges that WhatsApp introduced its infringing product and services into the stream of commerce "knowing that they would be sold in [the Eastern District of Virginia] and elsewhere in the United States. (Compl. ¶ 3.)

WhatsApp has filed two declarations by Jan Koum ("Koum"), the Chief Executive Officer and Co-Founder of WhatsApp. The declarations show that (1) WhatsApp has no office or employees in Virginia, (2) the designers and developers of the WhatsApp's software do not

---

[2] As of the date of entry of this opinion, six of the thirteen original cases have been dismissed, two defendants have had default entered against them, one has been transferred to the Southern District of Florida, and one has been transferred to the Western District of Washington. The remaining three, including this case, are still pending in this Court.

reside in Virginia, and they designed the software in California, (3) WhatsApp primarily uses third-party app stores to distribute its software product, (4) users of certain smartphone operating systems can download the software directly from WhatsApp's website, (5) WhatsApp relies on the app stores to receive the annual 99 cent charge for use of its product, (6) WhatsApp and the various app stores formed their contracts under the laws of states other than Virginia, (7) WhatsApp does not keep information on its customers' addresses, (8) WhatsApp has not advertised the WhatsApp Messenger in Virginia or any other state, (9) WhatsApp's servers store information on its users' telephone numbers, but this information does not necessarily correlate with the user's actual location, (10) WhatsApp's servers "may also store undelivered messages which may contain a user's location if the user actively elects to send such a message with their user location, but such information is held only as long as necessary to deliver the message, at which point WhatsApp does not retain any further information," and (11) WhatsApp stores non-user telephone numbers obtained from its users' address books in a way that "WhatsApp is unable to retrieve them in their original form." (Dk. No. 21-1, Koum Decl. ¶¶ 3–10; Dk. No. 23-14, Koum Supplemental Decl. ¶¶ 3–7.)

ICC has produced very little evidence in opposition to WhatsApp's motion to dismiss. It has produced various documents describing WhatsApp's popularity and success, and a screenshot from an Armenian website regarding a commercial featuring WhatsApp Messenger which aired on Al Jazeera Sports. (Dk. No. 22-2, Klingman Decl.)

## II. STANDARD OF REVIEW

Federal Circuit law governs whether a court has personal jurisdiction over a defendant in a patent infringement case. *Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC*, 861 F. Supp. 2d 730, 732 (E.D. Va. 2012) (citing *Reynolds & Reynolds Holdings, Inc. v. Data Supplies,*

*Inc.*, 301 F. Supp. 2d 545, 549 (E.D. Va. 2004)). At the motion to dismiss stage, "a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). The Court must "accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in its favor." *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006). The Court may rely on affidavits and other written material, but must resolve any factual conflicts between the parties in the plaintiff's favor. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002) (citing *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998)).

### III. DISCUSSION

*A. Personal Jurisdiction*

When evaluating personal jurisdiction over an out-of-state defendant, the Court must first determine "if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376–77 (Fed. Cir. 1998). In Virginia, "[t]he purpose of [the] 'long arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia." *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800, 802 (1977). When a state's long-arm statute extends to the limits of due process, the Court must only determine whether exercising personal jurisdiction over the defendant in the state comports with federal due process. *3D Sys.*, 160 F.3d at 1377; *see also Reynolds & Reynolds*, 301 F. Supp. 2d at 550. Thus, in this case, the Court must undertake only the constitutional due process analysis.

The Supreme Court decisions in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and its progeny set the standard for the constitutional due process analysis. The analysis (1) considers whether the out-of-state defendant has certain "minimum contacts" with the forum state and (2) ensures that the maintenance of the case does not offend "traditional notions of fair play and substantial justice." *Id.* Under the "minimum contacts" analysis, "a defendant may be subject to either specific or general jurisdiction." *Reynolds & Reynolds*, 301 F. Supp. 2d at 549. A court has specific jurisdiction over parties when the claims "arise out of or relate to" the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). On the other hand, a court has general jurisdiction over an out-of-state defendant "when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).

*i. This Court Lacks General Personal Jurisdiction Over WhatsApp*

This Court lacks general personal jurisdiction over WhatsApp because WhatsApp contacts with Virginia do not qualify as "continuous and systematic." Although neither the Supreme Court nor the Federal Circuit has established a specific test for analyzing whether a defendant's activities qualify as "continuous and systematic," "the standard for imposing general jurisdiction is high." *Reynolds & Reynolds*, 301 F. Supp. 2d at 550.

The Court can quickly dispose of ICC's contention that this Court has general personal jurisdiction over WhatsApp. ICC's memorandum in opposition to the motion to dismiss argues that "evidence shows WhatsApp is subject to both specific and general jurisdiction [in the Eastern District of Virginia]." (Dk. No. 22, Pl.'s Mem. Opp'n 6.) ICC, however, never

discusses general jurisdiction beyond this conclusory statement. Further, at the hearing on the defendant's motion to dismiss, ICC conceded that resolution of the instant motion turns on whether this Court possesses specific jurisdiction over WhatsApp. (March 28, 2013 Hr'g Tr. 37.)

### ii. *This Court Lacks Specific Jurisdiction Over WhatsApp*

This Court lacks specific jurisdiction over WhatsApp because WhatsApp does not have sufficient minimum contacts related to the cause of action within the Eastern District of Virginia. "The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (internal citations omitted). To satisfy the first prong, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Supreme Court in *Burger King* summarized the case law regarding an out-of-state defendant purposefully availing itself to a forum:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.

471 U.S. 462, 475 (1985) (internal citations omitted) (emphasis in original). Further, an out-of-state defendant has availed itself of conducting business in a forum "where the defendant 'deliberately' has engaged in significant activities within a State . . . ." *Id.* at 475–76 (citing

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)); *see also Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC*, 861 F. Supp. 2d 730, 732 (E.D. Va. 2012) (defendant cannot defeat jurisdiction in Virginia "where it admits that products were deliberately sold").

The parties agree that some users of WhatsApp's product do so in Virginia, and undoubtedly ordered the product while in Virginia. They also agree that WhatsApp stores minimal identifying data about its customers. ICC says that these contacts are enough to establish personal jurisdiction.

Under ICC's theory, however, every district in the United States has jurisdiction over WhatsApp, because it has consciously chosen to conduct business in every single forum in which a user sends a message with the WhatsApp Messenger. The WhatsApp Messenger ranks in the top five of the world's best-selling apps with an estimated 200-300 million users. (Dk. No. 22, Pl.'s Mem. Opp'n 4.) This Court does not agree with ICC's argument that a company "consciously" or "deliberately" targets a forum if a user unilaterally downloads or uses its software within that forum, nor does ICC cite any authority supporting its broad interpretation of specific jurisdiction. *Cf. Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012) (declining to extend personal jurisdiction over a corporate defendant who advertised in a publication that "was nationally distributed and not limited to [the forum state] . . . [and] appellants could not show that [defendant] targeted the [forum state] market at all.").

ICC also alleges that WhatsApp has purposefully availed itself to the Eastern District of Virginia because of the "Share Location" functionality of the WhatsApp Messenger, through which WhatsApp stores a user's location until WhatsApp can deliver the message to the recipient. (Dk. No. 22, Pl.'s Mem. Opp'n 11.) Each user has the option of using this functionality, but the WhatsApp Messenger does not require a user to share his location. (Dk.

No. 22-20, Klingman Decl., Ex. R.) Accordingly, this allegation fails to establish that WhatsApp has purposefully availed itself to the location in question because the user unilaterally decides to use the "Share Location" functionality. As the Supreme Court held in *Hanson v. Denckla*, 357 U.S. at 253, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."

Finally, ICC alleges that WhatsApp's growth "is supported by significant marketing activities." (Dk. No. 22, Pl.'s Mem. Opp'n 10.) To support this allegation, ICC provides a link to a commercial located on an Armenian website which aired on Al Jazeera Sports promoting a European soccer match. From this evidence, ICC concludes that "[t]hose commercials are accessible by Virginia residents and no doubt have attracted subscriptions." (Dk. No. 22, Pl.'s Mem. Opp'n 11.) WhatsApp's Chief Executive Officer Koum asserted in his declaration that WhatsApp has not advertised WhatsApp Messenger. (Dk. No. 21-1, Koum Decl. ¶ 10.) Indeed, the video upon which ICC relies neither mentions WhatsApp Messenger nor displays the product. (Dk. No. 23, Def.'s Reply 3.) Even if this commercial advertisement did display the WhatsApp Messenger, WhatsApp did not "deliberately" and "purposely" target Virginia based on a commercial accessible through a foreign website which aired on a foreign television station to promote a foreign sporting event. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) ("the availability of Pedre products on non-Pedre websites . . . would support jurisdiction only if Pedre had some responsibility for the third party's advertising of Pedre products on non-Pedre sites.")

Accordingly, the Court finds that WhatsApp has not purposely availed itself to the Eastern District of Virginia. The Court, therefore, lacks specific personal jurisdiction over WhatsApp because WhatsApp does not have the required minimum contacts with the forum.[3]

### *iii. Personal Jurisdiction Over WhatsApp Would Be Unreasonable*

Both general and specific personal jurisdiction require that a court's exercise of personal jurisdiction not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. In other words, exercise of personal jurisdiction must be reasonable. *Burger King*, 471 U.S. at 477. The applicable test requires a court to weigh five factors: (1) the burden on the defendant, (2) the forum State's interest in the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987). In this case, exercising personal jurisdiction over WhatsApp would be unreasonable—providing a second independent reason not to exercise personal jurisdiction over WhatsApp.

Adjudication of this claim in Virginia would significantly burden WhatsApp. All of WhatsApp's employees and officers are in California, as is all documentation on the design and development of the WhatsApp Messenger, the financial affairs of WhatsApp, and the contracts between WhatsApp and third parties. (Dk. No. 21-1, Koum Decl. ¶¶ 3-5.) Meanwhile, ICC

---

[3] In the complaint, ICC alleges that WhatsApp introduced its product and services "into the stream of commerce knowing that they would be sold in [the Eastern District of Virginia] and elsewhere in the United States." (Compl. ¶ 3.) In one of its briefs, ICC labels the "stream of commerce" theory as "inapposite." (Dk. No. 22, Pl.'s Mem. Opp'n 11.) Even if ICC relied on the "stream of commerce" theory, the Court would lack specific jurisdiction because WhatsApp did not intentionally target the Eastern District of Virginia as previously discussed. *J. McIntyre Machinery Ltd. v. Nicastro*, 131 S.Ct. 2780, 2788 (2011); *see also Asahi Metal Industry Co. v. Superior Court of Cali., Solano County*, 480 U.S. 102, 111–12 (1987) (requiring "something more" than placing a product into the stream of commerce).

does not have a significant interest in litigating in Virginia. The reasons presented by ICC include the facts that the previous assignee of the '748 Patent does business in Maryland and the inventor resides in Maryland. (Dk. No. 22, Pl.'s Mem. Opp'n 13–14.) While these two facts represent ICC's potential interest in litigating in Maryland, they do not present a valid interest in litigating in Virginia. The additional fact that a case on the '748 Patent between a *different plaintiff* and a different defendant was litigated in the Eastern District of Virginia by a different judge, *Telecommunication Systems, Inc. v. Mobile 365, Inc.*, No. 3:06CV485 (E.D. Va.), does not further *ICC's* interest in litigating in Virginia.

Another factor to determine the reasonableness of the Court exercising personal jurisdiction is Virginia's interest in the dispute. This patent dispute is between Texas and California companies. (Compl. ¶ 2–3.) Although some Virginia residents presumably use the popular WhatsApp Messenger, no evidence exists to show that Virginia residents use this software proportionately more than residents of any other state. Accordingly, "[t]his Court cannot stand as a willing repository for cases which have no real nexus to [the Eastern District of Virginia]." *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000) (internal citation omitted).

Lastly, an interest in judicial efficiency and fundamental social policy is served even if the Court dismisses this case. As previously stated, *see supra* 2 n.2, only three of the original thirteen lawsuits filed by ICC are still pending in the Eastern District of Virginia, while two other of those cases have transferred, respectively, to the Southern District of Florida and the Western District of Washington. While one judge litigating common issues among multiple lawsuits on one patent certainly increases judicial efficiency, this desire for efficiency cannot supersede the basic requirement in any lawsuit: personal jurisdiction. If the geographical spread of litigation

proves too burdensome, the Judicial Panel on Multidistrict Litigation can combine multiple lawsuits involving common issues to one district for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a).

Accordingly, in light of all the reasonableness factors, to exercise personal jurisdiction over WhatsApp would be unreasonable.

### B. Jurisdictional Discovery

In its opposition memorandum, ICC requests limited jurisdictional discovery "to the extent the Court believes additional evidence is necessary to evaluate WhatsApp's Motion . . . ." (Dk. No. 22, Pl.'s Mem. Opp'n 16.) As an initial matter, Fourth Circuit precedent governs the determination of jurisdictional discovery because the request qualifies as a procedural matter not unique to patent law. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009); *see also Prototype Prods., Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 704 (E.D. Va. 2012). ICC did not file a motion for jurisdictional discovery but, rather, informally requested such leave in their opposition brief. The Court denies ICC's request for jurisdictional discovery as improperly requested. *See Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (no abuse of discretion in "declining to grant a motion that was never properly made" but raised only in opposition to a motion to dismiss and in an objection to the magistrate judge's report); *see also* Fed. R. Civ. P. 7(b)(1).

Even if ICC had properly requested jurisdictional discovery, where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials by the defendant, a court may refuse jurisdictional discovery. *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 330 n.\* (4th Cir. 2013) (internal citations omitted); *see also Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th

Cir. 2002) (finding the district court did not abuse its discretion in denying jurisdictional discovery where "the plaintiff simply want[ed] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) ("The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only "bare allegations" to dispute defendant's affidavits denying jurisdictional acts or contacts.").

In this case, ICC "offers only speculation or conclusory assertions" about WhatsApp's contacts with the Eastern District of Virginia. Most of ICC's assertions regarding jurisdiction rest on the logic that over 200 million users use the WhatsApp Messenger, so some of those users must use it within the Eastern District of Virginia. This assertion certainly qualifies as both speculative and conclusory and seems no more than a "fishing expedition in hopes of discovering some jurisdictional basis of jurisdiction." *Base Metal Trading*, 283 F.3d at 216 n.3. Much of the additional information it seeks does not exist. (Dk. No. 23, Def.'s Reply 10 n.4.) Accordingly, the Court denies ICC's request for limited jurisdictional discovery.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the defendant's motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: September 12, 2013
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge